Good morning, Your Honor. May it please the Court, Gene Barabioff on behalf of Mr. Mantanez. At least I think that's how it's pronounced. Mantanez, okay. And I'd like to reserve two minutes for rebuttal with the Court's permission. You may, but you'll have to keep track of your time because that's all of it. My client's appeal presents one issue. Before I begin, is there a particular aspect on it that the Court would like me to address first? I don't think so. Tell us what you think is most important. Okay. Well, the issue before the Court is whether it was proper for the district court to deny my client equitable polling for sale. About six months, he was completely separated from his legal materials while he was in disciplinary segregation. I thought that was just for 11 days that he was separated from his legal materials. He was just kept away from the law library and locked down for the remainder of the period. I don't believe that's correct. I think he was separated from his legal materials for, I believe, May 31, 2006 to maybe as late as November 18, 2006. And, in fact, the district court proceeded under the assumption that he was, in fact, separated from his legal materials for that time period. What evidence is there in the record to show his efforts made prior to his placement in administrative segregation at first six months and then the final two weeks or so after he got out? Well, let me address that in turn. Regarding the first periods of pre-deprivation, I would concede that the record is kind of spotty as to whether my client did anything. Is it even spotty? Well, it's unclear. It was never really considered. But I would respectfully direct the court to the Gabaldon decision that we cited in the briefing. And the court there addressed, I think, the same issue, and it declined to consider that as something a showing lack of diligent effort on behalf of the petitioner because petitioner has one year to file his petition, not six months, not seven months. And given how the law is structured in terms of habeas corpus, the prisoner would get no benefit from rushing a filing rather than getting it rejected on a variety of procedural or substantive problems. Well, yes, but in order to get tolling, the circumstances have to be extraordinary. Isn't that correct? Correct. Yes, Your Honor. And the Supreme Court has been pretty strict about that. Yes, ma'am. So if you can't show that he tried to get the materials before he went into segregation or that he tried while he was in segregation diligently, then why is this extraordinary, that he simply was in ad seg for a period of months while the year was running? Well, Your Honor, first of all, regarding the period while he was in ad seg, I think he can show that he made efforts to get his property back. Well, what was the evidence there? Because that was one of the things that the district court found was that the documentation, the evidence was not sufficient to show that he did adequate due diligence. Right. First of all, he submitted, he swore a declaration on their penalty of purchase. He has this declaration, but then the paper trail, the district court said, was not enough. Well, first of all, I would respectfully suggest that a sworn declaration on their penalty of purchase is some evidence. And he did present four documents with that declaration. It was a document that showed that he had a bag of legal materials, that when he went in there was a bag of legal materials taken from him. He presented a document that showed that he asked the prison for copies of any requests for property return while he was in administrative segregation. He submitted a document showing that he eventually got his property back, I believe on November 18, 2006, which would put it at about five or six months of deprivation. And I would also suggest to the court that you have to look at the evidence my client presented in context with the respondent's lack of any contrary evidence. My client's declaration named specific officers who could corroborate his statement. He identified the facility. He gave the officers' names. I suggest that it would have been very easy for the respondent to produce a declaration from one of their employees and say, you know what, we don't know anything about anything. And I think had they done that, you know, I could see more point to what the district court had done. But given the specificity of my client's declaration, the fact is the documents present at least some support. And I will concede it's not great support, but it's some support to his declaration. And I have not seen a respondent either in the district court or on appeal suggest that it was untrue. They're just basically saying, well, you haven't presented enough evidence. And finally, you know, he's a pro set prisoner, and I believe the Ninth Circuit law directs that the court give pro set prisoners, you know, leeway in terms of perfecting their claims. You know, I think the case is Brown v. Raw, and the site escapes me for a moment. If the court is interested, I can close it up on the rebuttal. The other element that the district court relied on was that Montanian was in the lockdown due to his own actions. He had, I think, a prison-made weapon. Is that correct? Well, that was the filing that the prison officials had made, yes. And then the Gabaldon case was related to the prison violating its own regulations, and for that reason the court found that it constituted an extraordinary circumstance. Is there anything analogous here where there's a violation of prison regulations in putting him in there? Yes, Your Honor. We addressed that point in the reply brief. There are several regulations in California that are similar to the federal regulations issued in Gabaldon, and I would like to go back for a second and say that I don't think Gabaldon was premised exclusively on the federal regulations, but to the extent that it was based on that, California has similar regulations, 15 CCR 3120, 3160, and 3164. All of these are discussed in the reply brief, and one thing is clear in those regulations, that the state affirmatively declares that inmates' access to courts would not be abridged, even in disciplinary segregation, regardless of the reason. And the reason for those regulations is because I think the Constitution requires it. But did Mr. Montanez, did he meet the M3164B, it says, when you're in disciplinary detention, you're limited to pencil and paper or to legal materials if litigation was in progress. Did Mr. Montanez, was his litigation in progress? I thought the district court found that nothing, that he had taken no steps before that time. Well, I'm not sure was there. Well, the district court didn't consider this regulation at all. This is something that was only discussed on appeal. I don't think that there is any evidence that he did something specific in terms of filing until at least November of 2006. The district court did ask for supplemental briefing on certain things in the district court for my client. They didn't ask to address this specific issue. So had the district court been interested in that, we would have had a better record, or a lack of record, but that would have been more meaningful. But to go back to the regulations, I think California does have similar regulations to the one that the federal government has, and I think that's because the Constitution requires it. I see that I have about a minute left. Yes, you may resume. Thank you. Good morning. Deputy Attorney General Jim Michael Lehman on behalf of Respondent. Our arguments are twofold. One is the legal argument that there simply is no equitable tolling when one is deprived of one's legal materials based on one's own wrongdoing, and the factual one, which is the due diligence, the causal link, et cetera. Because the factual one Those are two things. I'm not sure I understood what you said. Our argument is basically twofold. One, the legal issue that simply says, as a threshold matter, when you're talking about equitable tolling, you've got to be talking with clean hands. Well, you're asking us to assume that he was properly and had sex. Well, that's never been disputed. Well, I know that, but, I mean, he's never – I know that he says he's in ad sec, but the question of whether or not the – you know, it's conceivable that the prison authorities could make up some reason to put him in ad sec so he couldn't get his materials. I'm just not sure. We've never held it's a matter of law. Were I a prisoner, at least, and were I deprived of my legal materials and I were alleging it was for six months, well, one, the procedures would be, by the way, I would be entitled to a hearing within the six months to determine whether that disciplinary detention was accurate. There's been no allegation that it wasn't accurate or that he was denied his regular review process of that. Two, again, coming back to what I was saying, if I'm a prisoner I would say somewhere along, by the way, I didn't have a check, just to be clear. That's never been said. It's never been disputed to my knowledge. In fact, it was both in the district court and my understanding of the appellant's brief, it's never been disputed at all. Rather, I understand the legal point to be, based on Galvedon, it doesn't matter. But my second argument, or our second argument, was based on the factual issue. That's not the law of this circuit yet, is it? Correct. Correct. And we were asking it, and we are asking it, to be the law of this circuit. Yeah. I simply was getting to also there's a factual question where, to the effect of assuming it is not the law of this circuit, one still has to show due diligence, and one still has to show some sort of causal link between the deprivation, be it library access, a lockdown, deprivation of a particular legal material, and not being able to file. And that's what I'm calling a factual question that's to be reviewed for clear error. And the district court did also, in the alternative, make findings on that. And because it seems to me, from an adjudicatory standpoint, that's the simplest way to call it. What do you understand the record to show with respect to his diligence before he went into Ad Seg and during the time he was there? Well, I don't think, I believe the statement was made that the record is unclear as to his diligence for the first six months. I don't think it's unclear at all. I don't think there's, it's even alleged that he did anything. I think it's pretty clear he did not. He's never indicated he did. We've never felt any need to dispute his failure to allege it. It's, again, it's been argued the whole time that it simply doesn't matter what I did for the first six months because I don't want tolling for that. But, of course, we're not talking about statutory tolling where one gets to stop and start the clock again based on state filings. We're talking about equitable tolling where one has to show due diligence. And my point is quite simply the district court had that issue before it. And then the alternative said this court does not find it's a factual matter that you exhibited due diligence in the six months at the front end or the three weeks at the back end. By petitioner's own allegation, he received his materials on November 18th, I believe is the property report, the date on the property report. The December 6th is the expiration of the limitations. And the petition is signed December 18th, I believe, and I think filed January 1 or something along those lines. So either way, at best case scenario, we have six months at the front end where nothing is done, three months at the back end where... Don't you mean three weeks? I'm sorry, three weeks, yes. Three weeks at the back end where nothing is done or we don't know what's done. And, again, taking it to the causal way, it's a three-claim petition. The claims are this. One was that we adjourned this conduct, which had been raised on direct appeal. The second was a, I believe, witness tampering. The witness was told to identify me. And the third was I told my appellate counsel to raise the second claim, but appellate counsel refused to raise this non-record claim. It's not clear what legal materials were required. And we've submitted this, by the way, in our supplemental excerpts of record. As far as the causal link, it's not clear what was required, what he needed in his legal materials. And I do want to make it clear, and I want to distinguish Galbanone on legal grounds, but also on factual grounds. Galbanone did, the Tenth Circuit did, do a due diligence analysis. That's to be found at 522 F. 3rd and 1126. And, again, to be clear, in Galbanone, his draft Section 2255 motion, it's called, they call it a motion, but the petition was seized. We're not just talking about legal materials. The federal prison officials seized the man's petition. And then during the due diligence analysis part of it, the Tenth Circuit goes through and says, well, he did show due diligence. What he showed is that he had been doing legal research in the prior period leading up to, and that's what resulted in a draft petition which was seized. And, again, on a factual distinction, just to complete the circle here, that was, in fact, a violation of federal regulations. So not only do we have the federal-state issue, but, again, it's an unclean hands issue. In Galbanone, the prison came to court with its own unclean hands, and it didn't dispute that. I believe every case which has dealt with it has gotten into the clean hands issue, be it Galbanone or the Second Circuit case of, I'm forgetting what point it's at for the week, talks about the prison officials wrongfully taking legal material, in other words, contrary to its own rules. So, again, sort of to complete the loop on the factual issue, these are all subject to clear error analysis. And I think sort of the cleanest way to resolve a case is petitioners simply can't show that this was clear error, these factual findings. Not to get to the, and, again, one more point I did want to get to on petitioners opening. I believe there was a statement saying that California's regulations essentially require someone in disciplinary detention to be given his legal material, and that's simply not so. And I believe the argument was made that not only do California's regulations require this, but somehow that's constitutionally mandated, and I believe based on the right to access to court. The quickest site that I can point the court to is at page 50 of our brief, which is Grayson v. Grayson, which is 185F sub 2nd, 747 at page 751 in Eastern District Admission case, which specifically says, the right of access to the courts has never been equated to the right to access of legal materials. The regulations in California very specifically say the right to access will not, access to courts will always be respected. As you indicated, the regulations say, regardless of why you're in detention, you are entitled to a piece of paper and a writing utensil to be given to you at the time and then taken from you, of course, when you're done writing. And that you are also entitled to the library card. It imprisons, there's a system for which one can ask for particular library books, particular cases, et cetera, even if one is in detention. I'm unaware of any case that says that's constitutionally inadequate. And I didn't understand any of the allegations to be that this is a case involved in a facial over as applied constitutional challenge to California's regulations. It's simply about whether or not this man is entitled to equitable tolling. Unless the Court has any questions on this issue, I just wanted to make with my remaining time, just a quick point that there is a world of difference between someone like Mr. Montanez, who is the predator and who is in disciplinary detention because he has a shame, and Mr. Espinoza-Matthews, who is the prey, who is in detention or as said because he's been stabbed. California makes that distinction. So far the Ninth Circuit has only been called upon to deal with a situation where you have the Espinoza-Matthews of the world. I would ask the Court to also rule in this case that when you come to court with unclean hands because you have been caught with a shank, you don't get equitable tolling. And with that, I believe I have very little time left. You have used your time. Thank you. Unless the Court has any questions. No. Thank you. Thank you. A couple of points. Number one, we did dispute in a reply brief that there has ever been a proper finding that my client has actually did anything wrong. There has never been a trial, no counsel. I don't want to use the term con group where I don't know what the proceedings were. But the fact is administrative hearing held by prison officials, no counsel. There is some indication in the hearing minutes that my client has mental health issues. I don't think that's a reliable vehicle for anyone to call my client a predator. Number two, regarding whether the Constitution requires the state or prohibit them from completely denying access to courts as a disciplinary measure, we cited Downs v. Smith. There is also a second circuit case called, I think it's Hispula-Hamlin v. Walker. Mr. Lehman talked a lot about the district court decision in that case. I talked about the circuit court decision in that case, which affirmed the judgment but for a completely different reason. And then Judge Sotomayor said that complete deprivation of legal materials as a disciplinary measure would create a constitutional problem. And with that, my time is up. Thank you. The matter just argued is submitted for decision. We'll hear the next case, which is United States v. Chen.
judges: Sedwick, Schroeder, Ikuta